DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**GISELLE CAPPS,**
Appellant,

v.

**CHARLES A. CAPPS, IV,** and **ONE TRADE CAPITAL, INC.,**
Appellees,

No. 4D2025-3371

[December 17, 2025]

Appeal of a nonfinal order from the Circuit Court for the Seventeenth Judicial Circuit, Broward County; Kristin R. Kanner, Judge; L.T. Case No. FMCE-25-012139.

Sandy T. Fox and Sara E. Ross of Sandy T. Fox, P.A., Miami, for appellant.

Paul Morris of Law Offices of Paul Morris, P.A., Miami, and Karen B. Weintraub and Makayla Jacmacjian of Sidweber & Weintraub, P.A., Fort Lauderdale, for appellees.

CONNER, J.

In this marriage dissolution proceeding, Wife appeals a nonfinal order which suspended, on an emergency basis, her unsupervised timesharing with, and parental responsibility for, the parties' four minor children (ages nine, eight, seven, and six). We have jurisdiction. Fla. R. App. P. 9.130(a)(3)(C)(iii)(b).

We affirm the emergency suspension of Wife's temporary timesharing and parental responsibility because the trial court properly determined an emergency situation existed that required the children be temporarily protected, without notice and a full evidentiary hearing, from substantial emotional abuse or trauma created by Wife.

*Background*

In early July 2025, Wife petitioned to dissolve the marriage. Early on, the dissolution proceeding became contentious concerning the children, and the trial court appointed an attorney guardian ad litem ("GAL") for the children.

In mid-August 2025, the trial court heard Husband's motion for temporary timesharing and Wife's motion to restrict Husband's timesharing. After receiving the GAL's input, the trial court entered an order granting shared parental responsibility and providing both parties with ample timesharing with the children. The order also required both parties to immediately participate in individual counseling and enroll the children in individual therapy.

On October 19, Wife filed an emergency motion to suspend Husband's timesharing with the children. The motion alleged the Department of Children and Families ("DCF") and law enforcement had an active investigation following a medical evaluation of all four children that concluded "something was not right" and the physician "suspected potential overmedication and trauma." The motion clearly implied Husband was the perpetrator of harm to the children.

The next day, Husband filed his sworn emergency motion to suspend Wife's timesharing. Husband's motion alleged Wife intentionally fabricated a false claim that Husband was administering drugs to the children. Husband alleged Wife unilaterally not only took the children to the hospital to be drug tested, but also to have an invasive pelvic examination conducted on their two daughters. The day after the hospital examinations, Husband learned the Davie Police Department ("DPD") was conducting a second investigation that Husband was sexually molesting one or more of the children. This was a second investigation because in June 2025, Wife made a similar accusation to the DPD, which was closed as unfounded. Husband's motion gave a chronology of events orchestrated by Wife to have Husband investigated for abuse since the beginning of the dissolution proceeding. The motion contended Wife's timesharing should be suspended because Wife was subjecting the children to trauma by triggering several investigations causing emotional harm from invasive examinations and interviews by DCF, sexual abuse therapists, and law enforcement.

The same day Husband's emergency motion was filed, the trial court entered an order deferring ruling on both emergency motions until further hearing.

On October 21, the trial court heard various matters including the parties' emergency motions. Regarding the emergency motions, the trial court wanted to hear whether the GAL had any additional information about the children. Under oath, the GAL testified he received information the children had been taken to a hospital for testing because Wife believed Husband had drugged one or more of the children. The GAL also reported DCF and the DPD had been to the marital home to conduct investigations. The GAL stated more information was forthcoming.

The GAL's testimony prompted the trial court to set a status conference for the emergency motions on October 31. At that status conference, the GAL reported that while the status conference was occurring, the children were being evaluated yet again at a sexual assault treatment center. The trial court deferred

ruling again on both emergency motions and set another status conference for November 4, 2025, to obtain more input from the GAL regarding the October 31 sexual assault assessment.

At the November 4 status conference, the GAL reported that the October 31 forensic evaluation revealed no signs of sexual abuse. With permission, Husband's counsel gave the trial court a chronology of Wife's attempt to smear Husband. Counsel's chronology included the events listed in Husband's October 20 emergency motion as well as events after October 20.

Recognizing any significant change in temporary timesharing would require an evidentiary hearing, the trial court initially again deferred ruling on the dueling emergency motions and instructed the parties to contact the trial court's judicial assistant to arrange an evidentiary hearing. However, in reflecting further on the situation, the trial court expressed "grave concerns" about the children being exposed to more than one sexual assault assessment and multiple DCF and law enforcement investigations initiated by Wife. The trial court found the situation presented an emergency need to protect the children from "grave danger and psychological trauma." Thus, the trial court orally announced it was suspending Wife's timesharing until a full evidentiary hearing could be conducted. Upon the GAL's recommendation, the trial court allowed Wife to have professionally supervised visitation with the children. The trial court again instructed counsel to obtain an evidentiary hearing date for both motions.

On November 5, the trial court entered the order under review. Although not orally announced at the hearing, the written order also suspended Wife's shared parental responsibility for the children.

On November 7, Wife filed her motion for rehearing. On November 12, the trial court entered an order granting Wife's rehearing motion and set an evidentiary hearing on the parties' competing emergency motions for December 15. The order granting rehearing did not modify the November 5 order temporarily suspending Wife's parental responsibility for and timesharing with the children.

*Appellate Analysis*

Wife argues her due process rights were violated when the trial court suspended her timesharing without sufficient notice and opportunity to be heard. After a careful review of the parties' appellate appendices, we disagree with Wife's arguments.

The heart of the matter is the propriety of the trial court's order modifying a prior temporary order regarding parental responsibility and timesharing on an emergency basis without a full evidentiary hearing. We reject Wife's argument that due process was violated because Wife had inadequate notice.

*Smith v. Crider*, 932 So. 2d 393 (Fla. 2d DCA 2006), is instructive. In *Crider*, the mother appealed an order denying her motion to dissolve an ex parte temporary injunction. *Id.* at 396. The injunction temporarily modified a final marriage dissolution judgment by reducing the mother's rights and giving the father sole parental responsibility. *Id.* In analyzing the propriety of the temporary injunction, the Second District said:

> This court has recognized that under extraordinary circumstances, a trial court may not only enter an order temporarily modifying custody of a child, but may do so without affording prior notice to the opposing party. Again, however, such an order requires an emergency situation, such as where a child is threatened with physical harm or is about to be improperly removed from the state. *See Loudermilk v. Loudermilk*, 693 So. 2d 666, 667–68 (Fla. 2d DCA 1997); *see also Williams v. Williams*, 845 So. 2d 246, 248 (Fla. 2d DCA 2003) ([first] citing *Wilson v. Roseberry*, 669 So. 2d 1152 (Fla. 5th DCA 1996)[;] and [then citing] *Gielchinsky [v. Gielchinsky]*, 662 So. 2d [732,] 733 [(Fla. 4th DCA 1995)])). Even where a trial court properly enters such an order, an opportunity to be heard should be provided to the opposing party as soon thereafter as possible. *Loudermilk*, 693 So. 2d at 668. Failure to give notice to the opposing party prior to the entry of an order when no emergency exists, or failure to provide notice and an opportunity to be heard promptly after the entry of an order when an emergency is presented, deprives the opposing party of his or her right to procedural due process. *See, e.g., Loudermilk*, 693 So. 2d at 668; *Wilson*, 669 So. 2d at 1154.

*Id.* at 398 (emphasis added). Thus, as the Second District acknowledged, Florida caselaw has recognized that in very limited situations, a trial court can modify prior child custody, parental responsibility, and timesharing orders on an emergency basis for the protection of children without notice and a full evidentiary hearing.

The language in the caselaw describing an "emergency situation" justifying an emergency protection order as situations "where a child is threatened with physical harm or is about to be improperly removed from the state" traces back to our opinion in *Gielchinsky*. In *Gielchinsky*, a short opinion, we reviewed a petition and emergency motion alleging the mother was hindering the father's visitation rights and hampering the father's relationship with the children. 662 So. 2d at 732. In reversing the trial court, we observed "no evidence of an actual emergency, and once the [trial] court became apprised of that fact, it should not have proceeded [with the temporary relief motion]." *Id.* at 733. We then stated:

We do not intend to discourage trial courts from taking appropriate action <u>where there is a true emergency, where, for example, a child is threatened with physical harm or is about to be improperly removed from the state</u>. When the court here took such action in the absence of an emergency, however, it essentially determined the case without giving the parties the opportunity to have a full and complete hearing on the issues.

*Id.* (emphasis added).

*Gielchinsky* provided an <u>example</u> of what could constitute an emergency justifying an emergency order for the protection of children. Given the *Gielchinsky* opinion's brevity, we do not construe the opinion, or any other cases citing the *Gielchinsky* description of an "emergency situation," as limiting an emergency to solely situations "where . . . a child is threatened with physical harm or is about to be improperly removed from the state." Given a trial court's inherent authority to protect children, we construe the caselaw and hold that "emergency situations" justifying emergency child protection orders modifying prior child custody, parental responsibility, or timesharing orders to include situations in which <u>a child or children are exposed to substantial emotional abuse or trauma by a parent or custodian</u>.

In the instant case, our review of the appendices confirms the trial court had valid "grave concerns" that the children were being exposed to substantial emotional abuse or trauma by Wife. For that reason, the trial court entered the emergency protection order under review. The trial court recognized it must afford Wife a full evidentiary hearing to allow both sides to present evidence and argument as to the need for the order to remain in effect.

We reject Wife's argument that the November 5 order was entered solely on the statements of Husband's counsel at the status conference with no sworn proof to support the allegations. Husband's October 20 emergency motion was sworn to by Husband and the motion had attached documents which were authenticated by Husband's statements in the motion. We also note that at the October 21 hearing, the GAL, under oath, reported the children were being tested for drugs and investigated by DCF and the DPD for sexual abuse. While Husband's counsel's representation of events after October 20 were very concerning to the trial court at the November 4 status conference, we are satisfied that Husband's sworn October 20 emergency motion and the GAL's sworn October 21 testimony were sufficient to justify the emergency order suspending Wife's timesharing.

*Conclusion*

We hold the trial court's emergency November 5 order suspending Wife's timesharing with the children with allowance for supervised visitation was

properly entered. The emergency suspension of Wife's shared parental responsibility was also proper. Thus, we affirm the emergency suspension of Wife's timesharing and parental responsibility until further order of the trial court.

We previously issued an order denying Wife's motion for stay and authorizing the trial to proceed with a full evidentiary hearing on both emergency motions on December 15, 2025. We issue this opinion on the assumption the full evidentiary hearing commenced on December 15. If the full evidentiary hearing did not begin on December 15 for any reason, then the trial court shall reschedule a full evidentiary hearing on an expedited basis.

Our affirmance expresses our conclusion that the trial court ruled correctly in determining an emergency existed which required the trial court to enter an emergency order to protect the children. Nothing we have written should be construed as suggesting or directing how the trial court should rule as to either pending emergency motions after a full evidentiary hearing.

*Affirmed and remanded with instructions.*

KUNTZ, C.J., and CIKLIN, J., concur.

*       *       *

**Not final until disposition of timely-filed motion for rehearing.**